HENRY H. CRAIG et al., Respondents, *v.* FRANK J. BUTLER, Appellant.

*Craig* v. *Butler*, 83 Hun, 286, affirmed.
(Argued April 28, 1898; decided June 7, 1898.)

APPEAL, by permission, from a judgment of the late General Term of the Supreme Court in the fifth judicial department, entered December 29, 1894, affirming a judgment of the Monroe County Court in favor of plaintiffs entered upon a decision of the court on trial without a jury.

*Thomas Raines* for appellant.

*Albert H. Harris* for respondents.

*Per Curiam.* The court is of the opinion that the judgment appealed from should be affirmed, with costs, for the reasons given by the learned General Term in its opinion as reported in 83 Hun, 286.

PARKER, Ch. J. (dissenting). The plaintiffs' assignor leased to the defendant a building known as Seibald Cottage and the ground and premises appurtenant thereto, together with the household furniture and personal property therein contained for three years from May 1st, 1889, at an annual rental of $1,850, to be paid as follows: $200 on the delivery of the lease; $150 on each of the first days of May, June, July and August, and the balance on the first day of September of each year.

The defendant went into possession of the demised premises under the lease, paid down $200 upon the execution thereof, and thereafter $150 on the first days of May, June, July and August. But when the first day of September came, upon which day he was by the terms of the lease to pay the $1,050 balance of the yearly rental, he did not pay, for the reason that about 6:30 o'clock in the morning of that day the buildings were totally destroyed by fire without any fault on his part, and, therefore, he claimed to be within the protection of section 1 of chapter 345 of the Laws of 1860, which reads as follows: "The lessees or occupants of any building which shall, without any fault or neglect on their part, be destroyed * * * shall not be liable or bound to pay rent to the lessors or owners thereof, after such destruction or injury, unless otherwise expressly provided by written agreement or covenant, and the lessees or occupants may thereupon quit and surrender possession of the leasehold premises, and of the land so leased or occupied."

The construction of the statute which the respondents contend for would enable a landlord to recover of his tenants the yearly rent in advance if the rent became due a day before the destruction of the premises. The appellant insists that a proper construction of the statute would enable a tenant at a yearly rent payable at the end of the term to escape payment entirely if the house should burn down on the 364th day of

the term.   It does not seem to me that the statute should be given the construction contended for by either party.   Midway ·between these extremes may be·found a natural and ordinary construction which will harmonize with the intent of the legislature as generally understood.   The purpose of this statute was to abrogate the severe rule of the common law holding the tenant to the payment of rent notwithstanding the building rented should be destroyed or rendered untenantable during the running of the lease, and to permit him in such event to quit and surrender possession of the demised premises.   The object of the legislature is accomplished when the tenant pays for such portion of a term as he occupies the demised premises and is relieved from paying for such part thereof as he is prevented from enjoying without fault on his part.   So, if the tenant occupies the demised premises for the greater part of the term, the rent of which is payable at the expiration thereof, he shall not have the premises free for the time actually occupied even if they shall be destroyed without his fault prior to the end of the term; nor, on the other hand, shall the landlord compel the payment of the yearly rent in advance if pay day shall arrive a few hours before the total destruction of the premises.

The natural and ordinary use of the words employed in the statute seems to incline in favor of a construction which, in either event, would compel the payment of such value as the tenant has actually received out of the premises and no more. The statute provides that if any building shall be destroyed the lessee "shall not be liable or bound to pay rent to the lessors or owners thereof after such destruction or injury." This does not mean that the tenant shall not be liable to pay whatever back rent he owes at the time of the destruction of the property or to pay such proportion of unpaid rent as by operation of the statute and the act of the tenant in surrendering the possession of the premises became due at the time of the surrender; but after such surrender the tenant shall not be liable to pay rent for the unexpired portion of the term, which, but for this remedial statute, would have been enforceable under the terms of the lease.   It matters not that by the terms of the lease the rent is already due and payable

if the fact is that it covers a portion of the term during which the tenant cannot occupy the premises because of their destruction, for, notwithstanding the provisions of the lease as to time of payment, the statute operates to relieve the tenant unless it is "expressly provided for by written agreement or covenant" that the tenant shall be bound to pay rent whether the premises be destroyed or not. Now, applying to this situation the provisions of the statute as we read them, we find that on the first day of September the defendant by the terms of the lease was to pay $1,050, or the balance of the yearly rental of $1,850, although the year was not to expire until the 30th day of April following. On the very day that payment was due, the building burned without any fault on the part of the tenant. The balance of the rent not having been paid, the statute comes to the tenant's relief and declares he is bound only to pay such a proportion of the rent as the premises were worth for the time occupied.

The plaintiffs undertook to show that the property was of such a nature that, on the first day of September, the tenant had received substantially all the benefit which the property could afford him; that it was a summer property with fairly good earning capacity during the summer months, but of comparatively little value for the balance of the year from September first. Some of plaintiffs' witnesses testified that the use of the premises, if uninjured, for the remaining part of the term would have been worth from $50 to $150, while a witness on behalf of defendant placed the value of their use to the tenant at $1,000. If the findings of the court furnished assurance of an apportionment of the rent, I should feel constrained to advise an affirmance of the judgment, for the testimony would have supported a finding that the tenant should pay $1,000, but there is no such finding; on the contrary, the findings of fact make no reference whatever to the subject of apportionment, while the first conclusion of law reads that "plaintiffs are entitled to recover of the defendant the rent reserved in the lease for the year ending May 1st, 1890, less the amounts paid by the defendant thereon."

By this conclusion of law the court decided that the defendant was not entitled to have the rent apportioned, that it was

not his right to have a deduction made because of the total destruction of the property by fire, but, on the contrary, that he was legally bound to pay to the plaintiffs the rent reserved in the lease, less such sum as had already been paid by him. To this finding the defendant took an exception, which calls for a reversal of the judgment.

The judgment should be reversed and a new trial granted, with costs to abide the event.

GRAY, O'BRIEN, BARTLETT and VANN, JJ., concur for affirmance.

MARTIN, J., concurs with PARKER, Ch. J., for reversal.

HAIGHT, J., not sitting.

Judgment affirmed, with costs.