VAN BRUNT, P. J., PATTERSON, O'BRIEN and INGRAHAM, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and injunction vacated, with ten dollars costs.

---

LAURA WERNER, Respondent, *v.* CARMINO PADULA and Others, Appellants.

*Landlord and tenant — total destruction of the demised premises by fire — unearned rent, paid in advance, cannot be recovered.*

Where a lease for the term of one year from March 1, 1899, at a rental of $2,200, $1,200 of which was payable on the delivery of the lease, $500 on June 15, 1899, and the balance on July 5, 1899, contains a provision "that in case the building or buildings erected on the said premises hereby leased shall be partially damaged by fire, the same shall be repaired as speedily as possible at the expense of the said party of the first part; that in case the damage shall be so extensive as to render the building or buildings untenantable, the rent shall cease until such time as the buildings shall be put in complete repair; but in case of the total destruction of the premises by fire or otherwise, the rent shall be paid up to the time of such destruction, and then and from thenceforth this lease shall cease and come to an end," the total destruction of the premises by fire on May 26, 1899, does not entitle the lessee to demand the unearned portion of the installment of rent paid upon the delivery of the lease.

This provision, with regard to the total destruction of the building, conferred upon the lessee no greater right than that given to her by chapter 345 of the Laws of 1860, which was continued in force by section 197 of chapter 46 of the General Laws.

PATTERSON and O'BRIEN, JJ., dissented.

APPEAL by the defendants, Carmino Padula and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in

the office of the clerk of the county of New York on the 10th day of November, 1899, upon the decision of the court rendered after a trial before the court without a jury at the New York Trial Term.

*George H. Taylor, Jr.*, for the appellants.

*Maurice Rapp*, for the respondent.

Rumsey, J.:

On the 18th of April, 1899, the defendants leased to the plaintiff certain premises for one year from March 1, 1899, at the rent of $2,200 for the term, of which $1,200 was payable on the signing and delivery of the lease, $500 on the 15th of June, 1899, and $500 on the 5th of July, 1899. On the day that the lease was made the plaintiff paid to the defendants the first installment under the lease. On the twenty-sixth of May the leased premises were totally destroyed by fire without any fault, carelessness or negligence on the part of the plaintiff or her agents. The lease contained the provision " that in case the building or buildings erected on the said premises hereby leased shall be partially damaged by fire, the same shall be repaired as speedily as possible at the expense of the said party of the first part; that in case the damage shall be so exten-sive as to render the building or buildings untenantable, the rent shall cease until such time as the buildings shall be put in complete repair, but in case of the total destruction of the premises by fire or other-wise, the rent shall be paid up to the time of such destruction, and then and from thenceforth this lease shall cease and come to an end, provided, however, that such damage or destruction be not caused by the carelessness, negligence or improper conduct of the party of the second part, her agents, servants or employees."

The plaintiff, after the destruction of the premises, surrendered them to the defendants. She claims that, as the rent by the terms of the lease was payable practically in advance, the clause quoted by. which, in case of the destruction of the premises by fire, the lease was determined and the rent should be paid to the time of such destruction, meant that if that contingency happened at any time before the end of the term, the defendants must return the unearned rent; because, she says, the provision clearly contemplated that rent was only to be paid during the time that actual enjoyment was pos-

sible. The defendants, on the contrary, insist that the clause only operates as to rent which shall not have been actually due at the time the buildings happen to be destroyed; and they claim that it does not require them to pay back any rent which they have received in accordance with the terms of the contract, even though the premises be destroyed before the expiration of the period for which the rent would have been earned if it should be apportioned. The learned justice at the Trial Term adopted the contention of the plaintiff, and ordered judgment for her in the sum of $880.50, which was conceded between the parties to be the amount not earned if the rent was to be apportioned.

Before the passage of chapter 345 of the Laws of 1860, which has been continued in force as section 197 of chapter 46 of the General Laws (The Real Property Law, Laws of 1896, chap. 547), where land was held under lease, the destruction of the buildings upon the land did not operate as an eviction nor entitle the lessee to surrender the premises, although the benefits of the lease were substantially lost to him by such destruction. (3 Kent, 465, 466.) This injustice was remedied by the statute above referred to, by which it was provided that where any leased building was destroyed so as to be untenantable, the lessee might, if the destruction was without his fault, quit and surrender possession of the leasehold premises, and that he should not be liable for the rent for the time subsequent to the surrender. The provision of the lease in question with regard to the destruction of the building is substantially the same as that of the statute; and if the lease had not contained the clause above quoted, the statute would have operated to give to the lessee the same remedy which she obtains now by the express covenant in her lease. The fact that she has put into her lease the same thing which the statute would have read into it does not give her any greater privilege or any different right than she would have had under the statute alone. By the statute she might have surrendered the premises upon the complete destruction of the building by fire without her fault, and she could not have been called upon to pay any rent after the surrender. By the provisions of the lease, after the total destruction of the premises by fire, the lease was determined, and that determination operated as a surrender of

the premises. When it was so surrendered the rent should be paid to the time of such destruction. That provision is the precise converse of the provision of the statute, which is that she is not to be liable for the rent after the surrender. As the terms of the lease and the provisions of the statute amount to precisely the same thing and have exactly the same meaning, they should receive precisely the same construction, because the tenant should not be given any greater rights for the reason that she has written the provisions of the statute into her lease than she would have received had she not done so.

The rights given to the tenant by the provisions of this statute are fixed in this State. If by the terms of his lease rent is to be paid in advance, the tenant comes under an absolute engagement to pay it on the day fixed, and he is not relieved from that engagement by the fact that the property is destroyed by fire, and he is liable to pay the rent due in advance even though the destruction takes place on the very day it falls due. This was the rule laid down in the case of *Craig* v. *Butler* (83 Hun, 286), which was affirmed in the Court of Appeals on the opinion of the General Term (156 N. Y. 672). The case of *Hecht* v. *Heerwagen* (14 Misc. Rep. 529) to the contrary must be deemed to be overruled by *Craig* v. *Butler* (*supra*). The principle in *Craig* v. *Butler* is laid down in the case of *Gugel* v. *Isaacs* (21 App. Div. 503).

Under the statute, therefore, the plaintiff would have been compelled to pay the first installment of rent, although the premises had been destroyed on the day after this lease was signed. But it is said that if this construction be given to her contract, she gets no more benefit from the contract than she would have had had she relied upon the statute. That is undoubtedly true. If she had written into her lease the exact words of the statute, they would have received there the same construction which the statute itself has received ; and the fact that she has written words in her contract which have the same meaning, gives her no other or different rights. When, therefore, on the day the lease was signed she paid the rent in accordance with its terms, that payment was final and absolute, and she was not entitled to recover it back in the event of the destruction of the premises before the whole of that rent had been earned.

The judgment of the Trial Term must, therefore, be reversed and a new trial granted, with costs to the appellants to abide the event.

VAN BRUNT, P. J., and INGRAHAM, J., concurred; PATTERSON and O'BRIEN, JJ., dissented.

PATTERSON, J. (dissenting):

I am not able to concur in the opinion of the court in this case. In my judgment it was properly decided at the trial and the plaintiff was entitled to the judgment directed in her favor. I agree to the proposition that her right is to be ascertained by strictly legal rules. The decision of the court below proceeds upon the theory of a promise in law inferable from the terms of the fire clause of the lease and requiring the defendant to repay to the plaintiff what is designated as unearned rent of the premises. Unless, by a fair construction of that clause of the lease, a promise to return that unearned rent can be implied the judgment cannot be sustained. The question, therefore, is whether upon a proper construction of that clause to ascertain the intention of the parties, they have so contracted that the defendant is entitled to retain the whole amount of money paid as the first installment of rent on April 18, 1899. While there are three conditions contemplated by that clause, each of which may operate separately, yet to ascertain intention the clause must be construed as an entirety. It próvides, *first*, that if the premises shall be partially damaged by fire, the same shall be repaired as speedily as possible at the expense of the lessor; *second*, in case the damage shall be so extensive as to render the building or buildings untenantable, the rent shall cease until such time as the building shall be put in complete repair; *third*, that in case of the total destruction by fire or otherwise, the rent shall be paid up to the time of such destruction and then and from thenceforth the lease shall cease and come to an end. These branches of one stipulation covering three contingencies evidently contemplate that the lessee should have the full enjoyment of the term, in consideration of the rent paid, or should pay only for so much of the term as she enjoyed. If the damage by fire rendered the building or buildings untenantable, the rent should cease until such time as the premises were put in complete repair. That provision clearly shows

that it was the intention of the parties that rent should be paid only during the time actual enjoyment of the premises was possible, and that construction is not impaired by the subsequent provision in the same clause, that in case of total destruction the rent should be paid up to the time of such destruction. When all of the provisions of the fire clause are given effect, the interpretation of them by the trial judge is fully justified. That clause is not a provision identical with the right of a tenant to surrender under section 197 of chapter 46 of the General Laws (The Real Property Law, Laws of 1896, chap. 547). It is an agreement between the lessor and the lessee by which the lessee abandons a right she had under the statute. Under the section cited she had the right to surrender the premises when they became *untenantable and unfit* for occupancy as well as when they were totally destroyed. By the terms of this lease, she was still bound to the term if the premises became untenantable, the landlord being under the obligation to restore them to a tenantable condition. During that period the rent was to cease. If on the nineteenth day of April, or at any other time, the premises had been damaged by the elements so as to be rendered untenantable, she would still have been bound to the term, the lessor being obliged to put them in repair, and by the stipulation of the lease, the rent for the period required to make those repairs would have ceased. That merely means that during that period the lessor would not have been entitled to any rent, and the fact that by his own stipulation he was not entitled to rent during that period would have raised the implied promise that he should return what he had received in advance for that period. As said before, the obvious purpose of this contract between the parties was that for the rent paid the lessee was entitled to the enjoyment of the premises, and when that became impossible, the consideration failed and there arose an implied promise to pay back so much of it as the lessor had received.

The judgment was right and should be affirmed.

O'Brien, J., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.